IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Robert Stein,	Case No. 3:15CV112

    Plaintiff

    v.	**ORDER**

Atlas Industries, Inc.,

    Defendant

This is an employment-discrimination case.

Plaintiff Robert Stein sued his former employer, defendant Atlas Industries, Inc., for interfering with his rights under the Family and Medical Leave Act (FMLA) and in retaliation for exercising those rights. He also claimed that Atlas fired him to interfere with his ability to receive, and as retaliation for having in the past collected, extensive health-care benefits for his son, in violation of the Employee Retirement Income Security Act (ERISA). Finally, he alleged that Atlas fired him for filing, following a work-related injury, a worker's compensation claim, in violation of O.R.C. § 4123.90.

I granted summary judgment to Atlas on Stein's federal claims and declined to exercise jurisdiction over his state-law claim. *Stein v. Atlas Indus., Inc.*, 2017 WL 2720339 (N.D. Ohio). On appeal, the Circuit affirmed as to the FMLA claims but reversed and remanded as to the ERISA claims. *Stein v. Atlas Indus., Inc.*, --- F.App'x ----, 2018 WL 1719097 (6th Cir.).

Now pending are the parties' joint motion for an order asserting supplemental jurisdiction over the worker's compensation retaliation claim (Doc. 85) and the defendant's motion for summary judgment (Doc. 68).

Jurisdiction is proper under 28 U.S.C. § 1367(a).

For the following reasons, I grant the joint motion and deny defendant's motion for summary-judgment.

**Background**[1]

Stein, a journeyman machinist, tore his left meniscus while working at Atlas's plant on December 23, 2013. (Doc. 59 1 at 28). He received treatment on January 8, 2014. (*Id.* at 30 31). Medical personnel concluded that Stein could continue to work with certain restrictions: "No lifting, no bending, no twisting, no turning, no lifting over 30 or 40 pounds, no kneeling, no squatting." (*Id.* at 35).

Stein's supervisor Mark Toeppe and other Atlas managers were aware of the restrictions, but they often failed to accommodate them.

As Stein testified, "I was still expected some days to do my normal job." (*Id.* at 35). Stein complained to Toeppe and another supervisor, Jamie Halbisen, but they insisted that Stein perform his "normal duties." (*Id.* at 35 36). Indeed, Toeppe told Stein that "he didn't have a job in this place to meet my restrictions," and that Stein "would not be sitting on [his] butt like the other [Atlas employee] who was on light duty." (*Id.* at 70).

---

[1] This order, which assumes familiarity with my prior decision and the Sixth Circuit's decision, sets forth the facts relating only to Stein's worker's compensation claim.

Stein filed a worker's compensation claim sometime after his injury and before March, 2014. (*Id.* at 34). The restrictions imposed in January remained in place until mid-May, 2014, when Stein had knee surgery.

After the surgery, Stein took FMLA leave through mid-July.

During a medical appointment on July 18, a physician's assistant cleared Stein to return to work on July 20, provided that Stein perform "office work only" through August 10. *Stein*, *supra*, --- F. App'x at ----, 2018 WL 1719097 at *1. Stein incorrectly interpreted the release as extending his leave through August 10, while Atlas expected Stein to return to work on July 20. *Id.*

On July 24, after Stein had not reported to work for three days, Toeppe called Stein and asked him to come to the plant so they could discuss the situation.

When Toeppe and Stein met, Toeppe said that he had identified some light-duty work that Stein could perform, such as "drill sharpening in the stock room and . . . some MSDS data sheets that needed updated [*sic*]." (Doc. 59 1 at 66). Stein objected that these tasks were inconsistent with his restrictions (*id.* at 65),[2] but Toeppe said that he was firing Stein because he violated Atlas's no-show/no-call attendance policy. *Stein*, *supra*, --- F. App'x at ----, 2018 WL 1719097 at *1 3.

Stein asked to speak with Steve Clark, Atlas's vice-president of operations. (*Id.* at 68 69). When Clark joined the meeting, he asked Stein "why didn't you come in, we've accommodated your light duty restrictions[.]" (*Id.* at 71). Stein said, "[N]o, really, you haven't[,]" and he reminded Clark of Toeppe's statement that there was no light-duty work for Stein to do. (*Id.* at 71 72). Clark then

---

[2] Another Atlas supervisor agreed that the light-duty assignments Toeppe selected were inconsistent with Stein's restrictions. (Doc. 64 1 at 174) (training new machine operators would require Stein to walk to production floor and spend time there); (*id.* at 176 77) (updating MSDS books would require Stein to walk to and from production floor).

3

said "they don't run us, we run us, we decide what we're going to do with you." (*Id.* at 69); (*id.* at 72) ("Steve Clark did say they run that place, the doctor doesn't.").

**Standard of Review**

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

**Discussion**

Under O.R.C. § 4123.90 an employer cannot fire an employee "because the employee filed a claim . . . under the worker's compensation act for an injury . . . which occurred in the course of and arising out of his employment with that employer."

"Courts analyze retaliatory-discharge claims under a burden-shifting framework where the initial burden of proof is on the complainant." *Scalia v. Aldi, Inc.*, 2011-Ohio-6596, ¶ 14 (Ohio App.). An employee must first make a prima facie showing that "the existence of an on-the-job-injury . . . resulted in a worker's compensation claim," and that a causal connection exists "between the claim and the employee's termination." *Id.* The burden then shifts to the employer "to articulate

4

a legitimate, nondiscriminatory reason for terminating the employee." *Id.* Finally, the employee has the burden to show that such a reason was pretext for unlawful retaliation. *Id.*

"The inference of retaliatory motive may be drawn from the surrounding circumstances, including the timing of the discharge relative to the protected conduct, whether punitive action was directed toward the employee as a result of the claim, a 'hostile attitude' toward the employee once the claim was filed, disparate treatment of the employee relative to others, and requests not to pursue a claim." *Id.*

The only elements of the claim in dispute here are causation and pretext. (Doc. 68 at 23 24; Doc. 72 at 31 33; Doc. 73 at 15 16). A reasonable jury, viewing the evidence in the light most favorable to Stein, could find for him on both elements.

As a result of his workplace injury and the ensuing worker's compensation claim, Stein could work, but only with light-duty restrictions.

From the get-go, however, Stein's immediate supervisor displayed a "hostile attitude," *Scalia, supra*, 2011-Ohio-6596 at ¶14, toward his physical restrictions. According to Stein, Toeppe insisted that he perform his "normal duties," even though they were more onerous than what his restrictions permitted. Stein complained, but his superiors required that he continue to work outside the restrictions. Toeppe even seemed to denigrate light-duty work, telling Stein that he would not let him "sit[ ] on [his] butt." (Doc. 59 1 at 70).

For his part, Clark, Stein's evidence shows, was openly dismissive of the restrictions, telling Stein that "the doctor doesn't" run Atlas Industries; rather, "we decide what we're going to do with you." (Doc. 59 1 at 69, 72). Notably, Clark made these comments during the meeting where Toeppe

5

fired Stein, and in direct response to Stein's objection that Atlas had not accommodated his restrictions.

Furthermore, Stein's dismissal came only five to seven months after he filed a worker's compensation claim.[3]

As the Circuit, reversing in part my earlier order, explained when discussing Stein's ERISA retaliation claim, a delay of seven months between his receipt of an ERISA-protected benefit and his firing supported his prima facie case of retaliation. *Stein*, *supra*, --- F. App'x at ----, 2018 WL 1719097 at *5 ("So even though seven months had passed since Jordan's most recent hospitalization, a reasonable juror could infer that Atlas's decision-makers were motivated by the prospect of future medical costs.").

"The burden of establishing a prima facie case of retaliation is not onerous and is easily met," *Dover v. Carmeuse Nat. Chems.*, 2010-Ohio-5657, ¶43 (Ohio App.), and Stein has met it here. The evidence that Atlas supervisors were regularly hostile toward Stein's injury-related restrictions, the fact that Clark displayed such animus during the meeting where Toeppe fired Stein, and the time between the protected activity and Stein's dismissal all suggest that Stein's worker's compensation claim caused his discharge.

Finally, Toeppe and Clark conceded that the light-duty work that Toeppe had identified for Stein (assuming he had returned to work after his FMLA leave) was not, in fact, light-duty. As discussed above, moreover, Toeppe forced Stein to work outside his restrictions, and Clark admitted that Atlas does not honor the medical limitations on its employees' ability to work.

---

[3] Stein was waiting on worker's compensation approval for an MRI in February, 2014, and his injury was in December, 2013. Neither the briefs nor the depositions of the principal witnesses establish when Stein filed his claim.

Viewed in the light most favorable to Stein, this evidence tends to show that Atlas had no interest in honoring Stein's injury-related restrictions, and that its unwillingness or inability to accommodate those restrictions was the real reason it fired Stein. *See Stein*, *supra*, --- F. App'x at ----, 2018 WL 1719097 at *5 (discussing other evidence of pretext, including Stein's long tenure with company as a "satisfactory employee"). A reasonable juror could therefore find that Atlas's legitimate, non-discriminatory reason for Stein's dismissal – violation of the no-show/no-call attendance policy – was a pretext for unlawful retaliation.

## Conclusion

It is, therefore,

ORDERED THAT:

1. The parties' joint motion for an order asserting supplemental jurisdiction (Doc. 85) be, and the same hereby is, granted; and

2. Defendant's motion for summary judgment on Stein's worker's compensation retaliation claim (Doc. 68) be, and the same hereby is, denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge